UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GENEVA FINIGAN,

                                    Plaintiff,

                    vs                                              1:05-CV-828

WILLIAM E. MARSHALL, individually and in
his official capacity as Deputy Sheriff of the
County of Saratoga, New York,

                                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                     OF COUNSEL:

DENNIS B. SCHLENKER, ESQ.
Attorney for Plaintiff
174 Washington Avenue
Albany, New York 12210

FITZGERALD, MORRIS, BAKER & FIRTH, P.C.          WILLIAM A. SCOTT, ESQ.
Attorneys for Defendant                          JOHN D. ASPLAND, ESQ.
One Broad Street Plaza
Glens Falls, New York 12801

DAVID N. HURD
United States District Judge


**MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

        Plaintiff Geneva Finigan ("plaintiff" or "Ms. Finigan") brings this action against

defendant William E. Marshall ("defendant" or "Deputy Marshall"), in his individual and official

capacities.  Plaintiff asserts two distinct causes of action:  first, false arrest in violation of 42

U.S.C. § 1983 and the Fourth Amendment; and second, abuse of process in violation of §

1983 and the Fourth Amendment.  Defendant moves for summary judgment pursuant to

Federal Rule of Civil Procedure 56(c).  Plaintiff opposes but does not cross-move for liability as a matter of law on the false arrest claim.  Oral argument was heard via video conference on January 4, 2007, in Utica and Albany, New York.  Decision was reserved.

## II. **FACTS**[1]

In 1975, plaintiff married Robert Finigan ("Mr. Finigan").  Together they had two children.  In or around 1988, Mr. and Ms. Finigan purchased a house located at 365 North Hudson Avenue, Stillwater, New York ("the residence").  They both held title to the residence.  In April 2003, plaintiff separated from Mr. Finigan and moved out of the residence, taking with her only one bag of belongings.  No formal separation agreement ever existed between the parties.  In October 2003, plaintiff formally commenced a divorce action against her husband.

On or about December 21, 2003, plaintiff learned that Mr. Finigan planned to celebrate the holidays at their son's house in North Carolina, and thus would not be at the residence during this time.  Ms. Finigan decided this would be a good time to retrieve some of her belongings from the residence, but before doing so she called her attorney and asked if this was permissible.  Her attorney told her it was permissible since there was no court order preventing her from entering the jointly owned residence.  On December 24, Ms. Finigan went to the residence to retrieve her personal belongings.  As of this date, there had been no equitable distribution of the marital property.  Plaintiff knew that Mr. Finigan had changed the locks since she moved out, so upon her arrival she called a locksmith.  When

---

[1]  As is required on Rule 56(c) motions for summary judgment, the evidence in this case must be viewed in a light most favorable to the non-moving party.  (See Pt. III.A infra.)  Therefore, where the facts are ambiguous or in dispute, they have been construed in favor of plaintiff.  It should also be noted that many of the following facts were not known to defendant at the time he allegedly seized plaintiff on December 26, 2003.  A discussion of exactly what information was available to defendant at that time and whether it gave rise to probable cause is set forth below.  (See Pt. III.B infra.)

the locksmith arrived, plaintiff told him that she lost her keys and showed him her driver's

license which listed "365 North Hudson Avenue" as her home address.  The locksmith

opened the basement.  Plaintiff entered the residence and removed several items, including

some ornaments from the Christmas tree that were given to her as gifts.  She left the

residence after approximately one hour, but left the basement door unlocked so that she

could return at a later date to retrieve more items.

On the morning of December 26, plaintiff returned with several members of her

family and began removing additional items from the residence.  At some point thereafter,

Deputy Marshall received a 911 poll from the New York State Police dispatcher of a burglary

in progress at 365 North Hudson Avenue, Stillwater, New York.  When defendant arrived at

the scene approximately eighteen minutes later, he recognized the residence as that of the

Finigans.  Because Stillwater is a small community, defendant had general knowledge of the

Finigans' divorce action and knew that plaintiff no longer lived at the residence.  Defendant

saw plaintiff's brother, whom he recognized, and asked him what he was doing there.

Plaintiff's brother told him they were there to get some of Ms. Finigan's belongings.  Ms.

Finigan was not there at that time because she had made a trip to the house of her friend,

Maureen Forsythe ("Ms. Forsythe"), to unload some of the items retrieved from the

residence.  Plaintiff's brother called her and told her to return as soon as possible because

Deputy Marshall was there to arrest her.

Before plaintiff returned, Mr. Finigan's brother-in-law and Deputy Marshall's close

friend, Robert Wood ("Mr. Wood"), arrived at the scene.  Mr. Wood informed Deputy Marshall

that he was watching the residence while Mr. Finigan was away.  He told defendant that Mr.

Finigan had changed the locks and that he did not know how plaintiff gained access to the

residence.  Mr. Wood also told defendant that Ms. Finigan "wasn't supposed to be on the

property."  (Marshall Dep. 43, Oct. 5, 2006).

When Ms. Finigan returned to the scene, Deputy Marshall asked what was going on

and she told him she was removing her property from the residence.  She also told him that

her attorney said this was permissible.  Deputy Marshall then told plaintiff to get into the back

of his marked sheriff's car.  Defendant, who was wearing his uniform and carrying his firearm

at the time, opened the door and plaintiff got into the car of her own volition.  She was not

placed in handcuffs.  Before taking her to the station, plaintiff was allowed to exit the car to

retrieve her mobile phone.  En route to the station, plaintiff asked where they were going and

defendant told her they were going to the Stillwater police station.  She then called Ms.

Forsythe with her mobile phone and told her that she had been arrested.

Upon arriving at the police station, Deputy Marshall seated Ms. Finigan in a chair

next to his desk whereupon he read to her the <u>Miranda</u> rights.  Defendant then asked her

why she was at the residence removing property.  She told him that she was simply retrieving

her belongings.  She further told him she was legally entitled to go to the residence and

retrieve her belongings because there was no court order prohibiting her from engaging in

such activity.  She again told defendant that her attorney said that this action was

permissible.  When defendant asked how she gained access to the residence, plaintiff told

him she employed the services of a locksmith.  When defendant began asking questions

about her divorce, plaintiff said she wanted to speak with her attorney.  Plaintiff was allowed

to use her mobile phone to call Ms. Forsythe.  She told Ms. Forsythe that she had been

arrested and needed her attorney's telephone number.  While plaintiff waited for Ms.

Forsythe to call her back with the number, defendant informed plaintiff that if she didn't return

all of the property that she had removed from the residence he would arrest her and all of her family members when he returned to work the following Monday.  He also told her that any attorney who told her it was permissible to go into the residence and remove property was stupid.  Ms. Forsythe called and provided plaintiff with her attorney's number; however, plaintiff was unable to reach her attorney.

Deputy Marshall then drove plaintiff in his sheriff's car back to the residence.  However, when they arrived at the residence it was apparent that everyone had already left the scene, so defendant began driving plaintiff back to the police station.  En route to the police station, defendant pulled into the parking lot of a convenience store located in the center of town and went inside.  Ms. Finigan remained in the backseat of the car with her head down fearing that her neighbors might see her.  Defendant emerged with a beverage shortly thereafter.  Realizing that her sister lived nearby, plaintiff asked defendant if he could take her to her sister's house instead of the police station.  Defendant agreed and took plaintiff to her sister's house.

No charges were ever filed against Ms. Finigan.

Prior to the events of December 26, 2003, Ms. Finigan had been going to counseling for depression.  After the events of that day, she continued to go to counseling and also began taking prescribed medication for anxiety.  She claims that the post-event counseling and anti-anxiety medication were required in part because of the events of December 26, 2003.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); Silver v. City Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991).  The court will not try issues of fact on a motion for summary judgment, rather it will determine "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law."  Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable [factfinder] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 57 (2d Cir. 1997).  In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986);  Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002).  In sum, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material

fact and the movant is entitled to judgment as a matter of law." Richardson v. Selsky, 5 F.3d 616, 621 (2d Cir. 1993).

### B. False Arrest

Defendant moves for summary judgment on plaintiff's false arrest claim on grounds that he had probable cause to arrest, or, alternatively, is entitled to qualified immunity.

The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Section 1983 provides for a private cause of action against persons who, acting under color of state law, deprive citizens of their constitutional rights. 42 U.S.C. § 1983. While common law torts are generally not actionable in federal court, when they rise to the level of a constitutional violation they become so under § 1983. See Cook v. Sheldon, 41 F.3d 73, 77 (2d Cir. 1994). Thus, a person may bring in federal court a claim for false arrest under § 1983 if their constitutional right to be secure in their person from unreasonable seizures has been violated. See id. Since the elements of common law false arrest are substantially similar to those of a § 1983 claim for violation of the right to be secure in one's person from unreasonable seizures, Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), federal courts look to the applicable state law. To prove the elements of false arrest under New York law, the plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see Savino v. City of New York, 331 F.3d 63, 75-76 (2d Cir. 2003); Broughton v. State, 37 N.Y.2d 451, 456-57 (1975).

Naturally, the threshold question is whether there has been a "seizure" (or "confinement" in common law terms) for purposes of the Fourth Amendment. "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for crime – 'arrests' in traditional terminology. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877 (1968). In more definite terms, a police officer has seized a person if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573, 108 S. Ct. 1975, 1979 (1988) (internal quotation marks omitted); see United States v. Lee, 916 F.2d 814, 819 (2d Cir. 1990). Factors that may indicate that a reasonable person would have believed that he was not free to leave include: "the threatening presence of several officers; the display of a weapon; physical touching of the person by the officer; language or tone indicating that compliance with the officer was compulsory; prolonged retention of a person's personal effects . . . ; and a request by the officer to accompany him to the police station or a police room." Lee, 916 F.2d at 819 (citing cases where one or more of these factors were considered).

On December 26, 2003, after a brief conversation, Deputy Marshall told plaintiff in unmistakable terms to get into his marked sheriff's car and then opened the rear car door. During this time, he was wearing his sheriff's uniform and carrying a firearm. Defendant did not physically force plaintiff into the car, rather, after being directed by defendant, she got into the car of her own volition. Plaintiff was allowed to briefly exit the car to retrieve her mobile phone. As defendant drove her away from the scene, plaintiff asked where he was

taking her and he told her to the Stillwater police station.  Plaintiff was not placed in handcuffs or otherwise forcibly restrained, nor were the Miranda rights read to her until they arrived at the police station.

Despite the lack of some of the traditional indicia of a formal arrest, the circumstances in this case, namely defendant's clear verbal direction to get in the car followed by his act of opening the car door all while in uniform and carrying a firearm, demonstrate that a reasonable person in plaintiff's position would have believed that she was not free to leave.  Clearly she was not free to leave while en route to the police station or once they arrived at the police station.  Defendant has offered no reasonable explanation that required him to seize plaintiff and remove her from the scene in order to investigate a potential crime.[2]

Therefore, plaintiff was arrested, seized, and confined for purposes of the Fourth Amendment when defendant directed her to get into his car outside of the residence.  This continued while in the sheriff's car en route to the police station, at the police station, and in the sheriff's car until she was voluntarily released by defendant at her sister's house.

The existence of probable cause to arrest is a complete defense to a claim of false arrest under § 1983.  Bernard, 25 F.3d at 102; Weyant, 101 F.3d at 852.  In common law terms, probable cause renders the confinement privileged.  Probable cause to arrest exists when the arresting officer has "'knowledge or reasonably trustworthy information of facts and

---

[2] It is difficult to fathom the potential crime defendant may have been investigating.  There was no written separation agreement or court order that prohibited plaintiff from entering the jointly owned residence.  Is defendant claiming that plaintiff may have been guilty of burglary of her own property?  Burglary requires that the subject knowingly enter or remain unlawfully in a building with the intent to commit a crime therein.  See N.Y. Penal Law § 140.20 (McKinney 2005).  As discussed above, defendant had no trustworthy information indicating that plaintiff entered the residence unlawfully or possessed the intent to commit a crime therein.

circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Escalara v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (quoting Weyant, 101 F.3d at 852); see Dunaway v. New York, 442 U.S. 200, 208 n.9, 99 S. Ct. 2248, 2254 n.9 (1979).  The probable cause to arrest inquiry focuses solely on those facts available to the officer at the time of the arrest; thus, facts that become available to the officer after the arrest, whether they confirm or belie the existence of probable cause, are irrelevant to the inquiry.  Ricciutti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996)).

Viewing the evidence in a light most favorable to plaintiff, the following facts were available to Deputy Marshall at the time he arrested plaintiff: one, there was a 911 poll from the New York State Police dispatcher for a burglary in progress at 365 North Hudson Avenue, Stillwater, New York; two, that residence belonged to Mr. and Ms. Finigan; three, the Finigans were in the process of getting a divorce and Ms. Finigan no longer lived at the residence; four, plaintiff's brother told him that they were there to get some of plaintiff's belongings; five, Mr. Finigan's brother-in-law and defendant's close friend, Mr. Wood, told him that he was watching the residence while Mr. Finigan was away, that plaintiff "wasn't supposed to be on the property" (Marshall Dep. 43, Oct. 5, 2006), and that he did not know how she gained access to the residence since Mr. Finigan changed the locks; six, Ms. Finigan told him she was removing her property from the residence; seven, she also told him that her attorney said it was permissible to do so.  At that point, defendant directed plaintiff to get into his sheriff's car.  When they arrived at the police station, other information became

available to defendant, e.g., plaintiff gained access to the residence through the services of a locksmith; however, this information is irrelevant to the probable cause inquiry.

Based on the above information available to Deputy Marshall at the time of the arrest and confinement, he did not, as a matter of law, have probable cause to arrest plaintiff. This is especially true considering that defendant failed to conduct even a basic inquiry into whether plaintiff was legally entitled to enter the residence, i.e., whether she held title to the property, whether there was a court order arising from the divorce action which prohibited her from entering the residence, whether she was otherwise violating a private separation agreement between her and Mr. Finigan, etc.  Moreover, defendant failed to conduct even a basic inquiry into the basis of Mr. Wood's hearsay statements.  Rather, he simply took the neighbor's statements as fact without even attempting to determine whether they qualified as reasonably trustworthy information.  Furthermore, even assuming the trustworthiness of the neighbor's statement that plaintiff "was not supposed to be on the property," this would not, as a matter of law, warrant a person of reasonable caution to believe that plaintiff committed a crime.  She may have only violated an oral agreement between her and her husband.[3]

Even though defendant is not entitled to summary judgment on plaintiff's false arrest claim based on the existence of probable cause, he may still avoid liability under the qualified immunity doctrine.  Under that doctrine, "government officials performing discretionary

---

[3] There are, of course, numerous other scenarios in which the plaintiff "was not supposed to be on the property" but committed no crime.  Absent a specific court order prohibiting her from entering the residence (which defendant could have checked out) it is again, difficult to envision <u>any</u> crime of which plaintiff <u>may</u> have been guilty.  Indeed, defendant tacitly acknowledges the tenuous nature of his probable cause defense in his memorandum of law: "there was, at a minimum, <u>a question</u> as to the Plaintiff's right to enter the premises, and/or remove property from the premises"; "the uncontested facts available to Deputy Marshall indicated . . . the suspect <u>may</u> not have any legal right to [remove property from the premises]." (Defs. Mem. 6 (emphasis added).)  Probable cause does not exist if there is a mere question as to whether a crime was committed, or a belief that the subject may have committed a crime.

functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). In the context of a false arrest claim, an official enjoys qualified immunity if he had "arguable probable cause" to arrest; or, in other words, if either (1) it was objectively reasonable for him to believe probable cause existed, or (2) officers of reasonable competence could disagree as to whether probable cause existed.  Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995).

Based on the sparse knowledge and information available to defendant at the time of the arrest outlined above, it cannot be said that it was objectively reasonable for defendant to believe that probable cause existed or that officers of reasonable competence could disagree.

Therefore, defendant's motion for summary judgment on plaintiff's false arrest claim on grounds that as a matter of law he had probable cause to arrest, or is entitled to qualified immunity, will not be granted.

### C. Abuse of Process

Defendant also moves to dismiss plaintiff's abuse of process claim on the ground that the undisputed facts show that no legal process was ever issued.

The Due Process Clause of the Fourteenth Amendment prohibits, and § 1983 makes actionable, the use of legal processes for wrongful purposes.  As with the false arrest claim, the elements of common law abuse of process are substantially similar to those of the § 1983 claim, thus federal courts look to the applicable state law.  To prove the elements of abuse of process under New York law, the plaintiff must show that (1) the defendant employed regularly issued legal process, (2) with intent to do harm without excuse or

justification, (3) in order to obtain a collateral objective outside the legitimate ends of the process.  <u>Savino</u>, 331 F.3d at 76

 In this case, the undisputed facts show that defendant never issued any legal process against plaintiff.  Plaintiff does not contest, or even address, this issue in her memorandum of law.  Therefore, defendant's motion for summary judgment on plaintiff's abuse of process claim will be granted.

## IV. <u>CONCLUSION</u>

 For the reasons discussed above, defendant's motion for summary judgment on plaintiff's false arrest claim will be denied because, based upon the facts most favorable to plaintiff, defendant did not have probable cause to arrest and is not entitled to qualified immunity.  Defendant's motion for summary judgment on plaintiff's abuse of process claim will be granted because the undisputed facts show that no legal process was ever issued against plaintiff.

 Accordingly, it is

 ORDERED that:

 1.  Defendant's motion for summary judgment is GRANTED in part and DENIED in part;

 2.  Plaintiff's <u>second</u> cause of action (abuse of process) is DISMISSED; and

 3.  Defendant's motion is DENIED in all other respects.

 IT IS SO ORDERED.

_____
United States District Judge

Dated:  February 9, 2007
   Utica, New York.